UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

OSMOND K. BROWN,

                         Plaintiff,              9:08-CV-0209

              v.

LT. DON; C.O. BROWN,

                         Defendants.

─────────────────────────────────

APPEARANCES:                          OF COUNSEL:

OSMOND K. BROWN
Plaintiff, *pro se*

HON. ANDREW M. CUOMO              CHARLES J. QUACKENBUSH, ESQ.
New York State Attorney General   Assistant Attorney General
Attorney for Defendants

DAVID N. HURD
Unites States District Judge

**MEMORANDUM-DECISION AND ORDER**

**I.  Introduction**

        Plaintiff Osmond K. Brown, a New York State prison inmate who is proceeding *pro*

*se* and *in forma pauperis*, commenced this civil rights action pursuant to 42 U.S.C. § 1983

seeking damages for the alleged violation of his constitutional rights.  Plaintiff claims that

defendant Corrections Officer Brown filed a misbehavior report against him in retaliation

for plaintiff's stated intention to exercise his First Amendment right to file a grievance.

Plaintiff claims that his due process rights were violated by defendant Lt. Don, who

conducted the Tier II hearing on that misbehavior report.  Plaintiff's claims arose during

January, 2008, while he was confined at Gouverneur Correctional Facility.  Dkt. No. 1.[1]

Defendants answered the complaint on May 15, 2008.  Dkt. No. 12.  Defendants now seek judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. No. 19.  Defendants argue that the allegations of plaintiff's complaint fail to state a claim upon which relief may be granted under the First and Fourteenth Amendments.  Defendants also seek dismissal of the complaint on the ground that they are entitled to qualified immunity from liability in this action.

Plaintiff opposes the motion.  Dkt. Nos. 20, 21.

## II.  Rule 12(c) Standard

The standard to be applied when deciding a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is identical to that of a motion to dismiss for failure to state claims upon which relief may be granted pursuant to Federal Rule 12(b)(6).  See Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  When deciding a Rule 12(b)(6) motion, a court must accept the allegations of fact in the complaint as true, drawing all reasonable inferences in the plaintiff's favor.  Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836 (1994).  A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the complaint includes "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, __, 127 S.Ct. 1955, 1974 (2007).  The Court of Appeals for the Second Circuit has interpreted the foregoing language to require that lower courts apply "a flexible 'plausibility

---

[1]  Plaintiff is presently incarcerated at Marcy Correctional Facility.

standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*[,]" but does not require a heightened pleading standard for civil rights claims.  Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (italics in original).  The burden undertaken by the moving party is substantial, as the question presented by the motion to dismiss is not whether the non-moving party is likely ultimately to prevail, "but whether the claimant is entitled to offer evidence to support the claims." Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (other citations omitted).

In order to withstand a motion to dismiss, a complaint must plead enough facts to "raise a right to relief above the speculative level." Bell Atlantic, 127 S.Ct. at 1965.  A *pro se* litigant's papers are to be construed liberally, especially when civil rights violations are alleged. Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991); see also Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

As a threshold matter, the Court notes that the parties have submitted various exhibits in connection with defendants' Rule 12(c) motion. Generally, a court may not look outside the pleadings when reviewing a Rule 12(c) motion for judgment on the pleadings.[2] For purposes of addressing such a motion, the "complaint" includes any written instrument

---

[2] If matters outside the pleadings are considered, Rule 12(c) provides that the motion must be converted into a motion for summary judgment and disposed of as provided in Federal Rule 56.  See Fed.R.Civ.P. 12(c).

attached to it as an exhibit and any statements or documents incorporated into the complaint by reference. Gant, 69 F.3d at 674; see Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  In addition, the mandate to read the papers of *pro se* litigants generously makes it "appropriate to consider plaintiff's additional materials, such as his opposition memorandum." Gadson v. Goord, 96 Civ. 7544, 1997 WL 714878, *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, inter alia, Gill v. Mooney, 824 F.2d 192, 195 (2d Cir.1987)).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  Donhauser v. Goord, 314 F.Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), vacated in part on other grounds, 317 F.Supp.2d 160 (N.D.N.Y. 2004).

In support of their motion, defendants submitted the "DOCS Central Office Review Committee Record from Grievance GOV-13655-08" and the "Hearing Packet and Transcript for the February 5, 2007[sic] Tier II Hearing."  See Dkt. Nos. 19-10; 19-11. Defendants claim that these records should be deemed to be a part of plaintiff's complaint because "it appears that plaintiff referred to, and relied upon" these documents in drafting his pleading.  Dkt. No. 19-2 at 3 n. 1.  In opposition to defendants' motion, plaintiff submitted various pages from these same exhibits.  See Dkt. Nos. 20, 21.[3]  Plaintiff does not object to the consideration of these materials nor does he contest the authenticity of

---

[3] Indeed, reasonably construing defendants' motion as one seeking summary judgment, plaintiff also included a "Statement of Disputed Factual Issues" in his opposition papers.  Dkt. No. 20 at 4-5.

these records.

Based upon the foregoing, the Court declines to convert defendants' motion for judgment on the pleadings into a premature motion for summary judgment. Thus, in laying out the factual background of the case for the purposes of deciding defendants' pending motion for judgment on the pleadings, the factual allegations contained in the supporting documentation will be considered to the extent that they are consistent with the allegations in plaintiff's complaint.

## III. Factual Background

The following facts are accepted as true for purposes of the pending motion. Boykin v. Keycorp, 521 F.3d 202, 204 (2d Cir. 2008).

On January 31, 2008, plaintiff attempted to leave his bible study group and return to his housing block in response to the early "go-back" announcement. C.O. Brown told plaintiff that the early go-back did not apply to his bible study group and directed him to return to the chapel where the study group was meeting. Plaintiff obeyed the order. On his way back in to the chapel, plaintiff stated out loud to himself words to the effect that the rules were always changing on Thursday nights and that he was going to file a grievance. Defendant Brown then went in to the chapel and ordered plaintiff to return to her desk, which he did. After a brief discussion, during which plaintiff denies being either verbally or physically disruptive, C.O. Brown accused plaintiff of threatening her, and summoned Sgt. Leone to escort plaintiff to the Special Housing Unit ("SHU"). The next day, C.O. Brown issued a misbehavior report charging plaintiff with violations of rules 102.10 (threats), 104.11 (violent conduct), 104.13 (creating a disturbance), 106.10 (refusing direct order),

5

and 107.10 (interference with employee).

A Tier II disciplinary hearing was held on February 5, 2008.  Lt. Don served as the hearing officer.  Plaintiff was found guilty of violating rules 104.13 (creating a disturbance) and 106.10 (refusing direct order) and was sentenced to thirty days keeplock confinement and loss of privileges.  The other three charges were dismissed.  The disciplinary findings were affirmed on appeal.

Plaintiff filed a grievance claiming that C.O. Brown wrote the misbehavior report in retaliation for his having stated his intention to file a grievance regarding her application of the go-back rules.  The grievance was denied by the superintendent and affirmed by the Central Office Review Committee.


## IV.  Discussion

### A. Plaintiff's Retaliation Claim

When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a right protected under the Constitution, including the free speech provisions of the First Amendment, a cognizable retaliation claim under § 1983 lies.  See Franco v. Kelly, 854 F.2d 584, 588-90 (2d Cir. 1988).  As the Second Circuit has repeatedly cautioned, however, claims of unlawful retaliation are easily asserted, and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus.  Courts must, therefore, approach such claims "with skepticism and particular care."  Dawes v. Walker, 239 F.3d 489, 491 (2d Cir.2001) (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.1983)), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Davis v. Goord, 320

F.3d 346, 352 (2d Cir.2003).

In order to state a First Amendment retaliation claim, a plaintiff must advance non-conclusory allegations "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Davis, 320 F.3d at 352 (quoting Dawes, 239 F.3d at 492). Inmates are entitled to free and uninhibited access "to both *administrative and judicial* forums for the purpose of seeking redress of grievances against state officers'" and the filing of prison grievances is protected conduct under the First Amendment. Franco, 854 F.2d at 589. In the prison context, the Second Circuit has defined "'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.'" Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004) (quoting Davis, 320 F.3d at 353) (emphasis in the original). While a plaintiff must allege harm caused by the retaliation, harm is not limited to "a chilling of speech," and may include a period of restrictive confinement. Id. at 382-83.

Defendants seek dismissal of Plaintiff's First Amendment retaliation claim against C.O. Brown, arguing that plaintiff has failed to establish that he engaged in protected conduct. Characterizing plaintiff's stated intention to file a grievance regarding C.O. Brown's enforcement of the movement rules as a "frivolous exercise," defendants claim that a "correctional officer cannot commit an act of unconstitutional retaliation for responding to such a threat" with a misbehavior report. Id. at 5-6. Stated otherwise, defendants argue that an inmate does not enjoy a First Amendment right "to file a frivolous grievance." Id. at 5.

7

Plaintiff opposes dismissal of his retaliation claim against C.O. Brown.  Plaintiff claims that C.O. Brown issued the misbehavior report in direct response to plaintiff's statement that he intended to file a grievance regarding the go-back procedures.  Plaintiff alleges, moreover, that he obeyed all orders given to him and that he was not verbally or physically disruptive.

The Court cannot conclude on the basis of the pleadings alone, that plaintiff could prove no set of facts consistent with these allegations that could result in liability against C.O. Brown.  Phillips v. Girdich, 408 F.3d 124, 127 (2d Cir. 2005).  Again the question posed by the motion is not whether plaintiff has garnered sufficient facts in support of his claim to withstand summary judgment or to prevail at trial but whether the complaint includes "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic, 127 S.Ct. at 1974.  This aspect of defendants' motion for judgment on the pleadings is denied.

Defendants also raise the affirmative defense of qualified immunity.  Dkt. No. 19-2 at 10-12.  "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Stephenson v. Doe, 332 F.3d 68,76 (2d Cir. 2003) (quoting McCardle v. Haddad, 131 F.3d 43, 50 (2d Cir. 1997)).  The Second Circuit has recognized that the availability of qualified immunity may "turn[] on factual questions that cannot be resolved at [the motion to dismiss] stage of proceedings."  Taylor v. Vermont Dept. of Educ., 313 F.3d 768, 793 (2d

8

Cir. 2002).[4]  In such cases, an adjudication as to the applicability of the qualified immunity affirmative defense on the basis of the pleadings alone would be premature.  Id.

Counsel argues that C.O. Brown enjoys qualified immunity from plaintiff's retaliation claim because an inmate does not possess "a First Amendment right to threaten baseless grievances."  Dkt. No. 19-2 at 11.  Even assuming, arguendo, the truth of this assertion, the pleadings alone afford no basis for concluding that plaintiff's yet to be filed grievance regarding the enforcement of the go-back procedures was "baseless."  Moreover, the facts alleged by plaintiff and accepted as true for the purposes of this motion, do not support a finding that it was objectively reasonable, as a matter of law, for C.O. Brown to conclude that plaintiff's conduct "required immediate discipline."

In this case, determination of the affirmative defense of qualified immunity "depends on the determination of certain factual questions that cannot be answered at this stage of the litigation."  Denton v. McKee, 332 F.Supp.2d 659, 666 (S.D.N.Y. 2004).  Therefore, the Court finds that dismissal for qualified immunity is not proper at this time and this aspect of defendants' motion for judgment on the pleadings is denied as premature.


### B. Plaintiff's Due Process Claim

To successfully establish a due process claim under 42 U.S.C. § 1983, a plaintiff must show both the existence of a protected liberty interest and that he was deprived of

---

[4]  In Stephenson, the court advised that a "defendant should press a qualified immunity defense during pretrial proceedings so that such a claim can be disposed of by summary judgment where possible, or factual disputes material to the defense can be identified and presented to the jury."  Stephenson, 332 F.3d at 76.

that interest without being afforded sufficient process.  See <u>Sandin v. Conner</u>, 515 U.S.

472, 483-85 (1995).  In <u>Sandin</u>, the Supreme Court determined that a protected liberty

interest from restrictive confinement will generally be limited to freedom from restraint

which imposes an "atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life."  <u>Id</u>. at 484; see also <u>Tellier v. Fields</u>, 280 F3d 69, 80 (2d

Cir. 2000); <u>Hynes v. Squillace</u>, 143 F.3d 653, 658 (2d Cir. 1998) (per curiam).  The

"atypicality" inquiry under <u>Sandin</u> is normally a question of law.  <u>Colon v. Howard</u>, 215 F.3d

227, 230-31 (2d Cir. 2000); <u>Sealey v. Giltner</u>, 197 F.3d 578, 585 (2d Cir. 1999).  In making

that determination the court must consider the specific circumstances of the confinement,

including both the duration and the conditions thereof.  <u>Colon</u>, 215 F.3d at 230; <u>Sealey</u>,

197 F.3d at 585.

The duration of the challenged confinement, while not determinative, is a significant

factor under <u>Sandin</u>.[5]  Courts have consistently held that SHU or keeplock confinement

under ordinary conditions for periods similar to that experienced by plaintiff do not rise to a

level sufficient to establish a due process claim.  See <u>Smart v. Goord</u>, 441 F.Supp.2d 631,

640 (S.D.N.Y. 2006) ("[T]he decisions in the Second Circuit are unanimous that keeplock

... of 30 days or less in New York prisons is not 'atypical or significant hardship' under

<u>Sandin</u>." (internal quotation omitted)); <u>Ochoa v. DeSimone</u>, No. 9:06-CV-0119, 2008 WL

4517806 *4 (N.D.N.Y. Sept. 30, 2008) (30 days SHU and keeplock); <u>Escalera v.</u>

<u>Charwand</u>, No. 9:04-CV-0983, 2008 WL 699273 *8 (N.D.N.Y. Mar. 12, 2008) (30 days

keeplock); <u>Thompson v. LaClair</u>, 2008 WL 191212, at *1 (N.D.N.Y. Jan. 22, 2008) (30

---

[5]  The Second Circuit generally takes the position that normal SHU confinement of 101 days or less does not constitute an "atypical and significant hardship" under <u>Sandin</u>.  <u>Colon</u>, 215 F.3d at 231 (citing <u>Sealey</u>, 197 F.3d at 589-90).

days keeplock, loss of recreation, packages, commissary and phone privileges).

Defendants seek dismissal of plaintiff's due process claims against Lt. Don on the ground that plaintiff does not enjoy a protected liberty interest in remaining free from 30 days keeplock confinement.  Dkt. No. 19-2 at 9.

Upon due consideration, the Court finds that the allegations in the complaint relating to plaintiff's keeplock confinement for a period of thirty days under conditions which are not claimed to have been unusual or atypical are not sufficient to state a legally cognizable liberty deprivation under Sandin.[6]

Defendants' motion for judgment on the pleadings dismissing plaintiff's due process claim against Lt. Don  is granted.  Because the problem with plaintiff's cause of action is substantive, such that better pleading will not cure it, leave to re-plead is denied as futile. See Cuocco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).


**V.  Conclusion**

Based upon the foregoing, defendants' motion for judgment on the pleadings pursuant to Rule 12(c) is granted in part and denied in part.

Accordingly, it is

ORDERED that

1.  Defendants' motion for judgment on the pleadings (Dkt. No. 19) is **GRANTED** as to plaintiff's due process claims, and Defendant Lt. Don is dismissed as a party to

---

[6]  In light of this ruling, the Court does not address defendants' claim that plaintiff received all of the process that was due in the course of the disciplinary hearing.  See Dkt. No. 19-2 at 9-10.

this action;

   2.  Defendants' motion for judgment on the pleadings (Dkt. No. 19) is **DENIED** as

to plaintiff's First Amendment retaliation claim;

   3.  The discovery completion deadline is reset to **May 15, 2009.**  Dispositive

motions shall be filed no later than **June 15, 2009**; and

   4.  The Clerk shall serve a copy of this Memorandum-Decision and Order on the

parties.

   IT IS SO ORDERED.


Date: March 10, 2009
      Utica, New York                              United States District Judge

12