UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

OSMOND K. BROWN,

                                        Plaintiff,

                                                          9:08-CV-0209
v.                                                        (DNH/GHL)

V. BROWN, *Correctional Officer,*
*Gouverneur Correctional Facility*,

                                        Defendant.
_____

APPEARANCES:                              OF COUNSEL:

OSMOND K. BROWN, 95-B-1958
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403

HON. ANDREW M. CUOMO                      CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the State of New York   Assistant Attorney General
   Counsel for Defendant
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been

referred to me for Report and Recommendation by the Honorable David N. Hurd, United States

District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Osmond K. Brown

("Plaintiff"), an inmate in the custody of the New York State Department of Correctional Services

("DOCS"), alleges that Veronique Brown, a correctional officer at Gouverneur Correctional

Facility, ("Defendant"), violated his constitutional rights by issuing a false misbehavior report

against Plaintiff in retaliation for Plaintiff stating his intention to file a grievance.  Currently pending

before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil

Procedure 56.  (Dkt. No. 27.)  For the reasons that follow, I recommend that Defendant's motion be

granted.

## I.      BACKGROUND

### A.      Summary of Plaintiff's Complaint

The complaint alleges, in relevant part,[1] as follows:

On January 31, 2008, at Gouverneur C.F., Plaintiff attempted to leave "Protestant Bible

Study" on the "early go back."  Dkt. No. 1 at 4.  Defendant would not allow Plaintiff to leave early.

*Id.*  Plaintiff informed Defendant that he would "grieve this issue."  *Id.*  In order to retaliate against

Plaintiff, Defendant issued a false misbehavior report against Plaintiff.  *Id.*  After a disciplinary

hearing, Plaintiff was found guilty of certain offenses.  Dkt. No. 1 at 4.

Plaintiff filed a grievance, asserting that Defendant retaliated against Plaintiff by "writing a

fabricated ticket."  Dkt. No. 1 at 2.  When asked to state the final result of his grievance, Plaintiff

wrote, "It[] was assigned and coded.  However you can't grieve a disciplinary hearing."  *Id.*

Plaintiff seeks injunctive and monetary relief.  Dkt. No. 1 at 6.

### B.      Summary of Grounds in Support of Defendant's Motion

Defendant argues that this action should be dismissed because (1) Plaintiff failed to exhaust

his administrative remedies before commencing this action; and (2) Plaintiff is unable to

substantiate the retaliation claim.  Dkt. No. 27-2.  Defendant also argues that she should be shielded

---

[1]  The complaint contains allegations against Lt. Don, the hearing officer who found Plaintiff guilty of certain offenses.  Dkt. No. 1.  Lt. Don was dismissed as a party to this action on March 10, 2009 when the Honorable David N. Hurd, U.S. District Judge, granted, in part, a motion for judgment on the pleadings filed by Lt. Don and V. Brown.  Dkt. No. 23.  Therefore, allegations against Lt. Don have been omitted.

from liability for damages based on qualified immunity.  *Id.*

  **C.**  **Summary of Plaintiff's Response to Defendant's Arguments**

  In response, Plaintiff argues that he exhausted his administrative remedies, and that there are genuine issues of material fact precluding entry of summary judgment.  Dkt. No. 31.

## II. LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

  Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Major League Baseball Properties, Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).  Only after the moving party has met this burden is the non-moving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[2]  Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]  In determining whether

---

  [2] *Matsushita*, 475 U.S. at 585-86; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . .").

  [3] *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) (internal quotations omitted) (emphasis added).

a genuine issue of material[4] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[5]

## III.    ANALYSIS

### A.    Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[6]  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[7]  The Department of Correctional Services ("DOCS") has available a well-established three-step inmate grievance program.[8]

Generally, the DOCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances.[9]  First, an inmate must file a complaint with the facility's IGP clerk

---

[4]  A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[5]  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citation omitted); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citation omitted).

[6]  42 U.S.C. § 1997e.

[7]  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[8]  7 N.Y.C.R.R. § 701.7.

[9]  7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7; *see also White v. The State of New York*, 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002).

within twenty-one (21) calendar days of the alleged occurrence.  If a grievance complaint form is not readily available, a complaint may be submitted on plain paper.  A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen (16) calendar days from receipt of the grievance to informally resolve the issue.  If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen (16) calendar days of receipt of the grievance, and issues a written decision within two (2) working days of the conclusion of the hearing.  Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven (7) calendar days of receipt of the IGRC's written decision.  The superintendent is to issue a written decision within twenty (20) calendar days of receipt of the grievant's appeal.  Third, a grievant may appeal to the CORC within seven (7) working days of receipt of the superintendent's written decision.  CORC is to render a written decision within thirty (30) calendar days of receipt of the appeal.  It is important to note that any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process.[10]

The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has

---

[10]  7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York*, 198 F. Supp.2d 546, 549 (S.D.N.Y. 2002), *vacated and remanded on other grounds*, 380 F.3d 680 (2d Cir. 2004); *see, e.g., Reyes v. Punzal,* 206 F. Supp.2d 431, 433 (W.D.N.Y. 2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him."); *Nimmons v. Silver*, 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.).

failed to exhaust his available administrative remedies, as required by the PLRA.[11]  First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."[12]  Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."[13]  Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements."[14]

If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81 (2006).

DOCS has a separate and distinct administrative process for inmates to appeal the result of a disciplinary hearing, which is not referred to as a "grievance" process.  In fact, the regulations specifically state that the results of disciplinary hearings are "non-grievable."  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.3(e)(1)-(2).  Appeals of Tier II dispositions must be made to the Superintendent

---

[11]  *See Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).  The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*.  *Chavis v. Goord*, No. 07-4787-pr, 2009 WL 1803454, at *1 (2d Cir. June 25, 2009).

[12]  *Hemphill*, 380 F.3d at 686 (citation omitted).

[13]  *Id.* (citations omitted).

[14]  *Id*. (citations and internal quotations omitted).

of the facility.  *Id.* at § 253.8.

On January 31, 2008, Plaintiff filed a grievance regarding Defendant's alleged actions.  Dkt. No. 27-8, at 13.  On February 14, 2008, the Superintendent found no evidence to support Plaintiff's allegations.[15]  *Id.* at 6.  On the same day, Plaintiff filed the complaint in this action.  Dkt. No. 1 at 6.  On February 21, 2008, Plaintiff signed an appeal statement, appealing the Superintendent's decision to the CORC.  Dkt. No. 27-8 at 6.  On March 19, 2008, the CORC upheld the Superintendent's decision.  *Id.*, at 4-5.  Therefore, Plaintiff commenced this action before he appealed to the CORC.[16]  Accordingly, Plaintiff failed to exhaust his administrative remedies before commencing this action.

Plaintiff summarily argues that he exhausted his administrative remedies when the Superintendent "affirmed Plaintiff's hearing" on February 13, 2008.  Dkt. No. 31 at 3; *see also* Dkt. No. 1 at 3.  Plaintiff appears to be referring to the Superintendent's decision dated February 13, 2008, which affirmed the hearing officer's guilty determination.  Dkt. No. 27-9 at 6.  However, the Superintendent's determination did not satisfy the PLRA's exhaustion requirement.[17]  Moreover,

---

[15]  As noted, generally, the Superintendent reviews an appeal of an IGRC decision.  In this case, the record contains no decision from the I.G.R.C.

[16]  During his deposition, Plaintiff acknowledged that he commenced this action before he received a final decision from the CORC.  Dkt. No. 27-14, at 67.

[17]  *See Black v. Selsky*, No. 01-CV-0155E, 2004 WL 625621, at * 3 (W.D.N.Y. Jan. 13, 2004) (holding that the plaintiff's completion of the disciplinary appeal process regarding the charges in misbehavior reports did not satisfy the PLRA's exhaustion requirement, and noting that the present § 1983 claims, which included allegations of staff misconduct related to those incidents giving rise to the discipline, must be grieved separately) (citing *Scott v. Gardner*, 287 F. Supp. 2d 477, 489 (S.D.N.Y. 2003) (holding that although the plaintiff completed the disciplinary appeal process with regard to a misbehavior report, the plaintiff had not exhausted his administrative remedies because he had not filed a separate grievance, and noting that "allegations of staff misconduct related to the incidents giving rise to the discipline must be grieved"); and *McCoy v. Goord*, 255 F. Supp. 2d 233, 256 (S.D.N.Y. 2003) (holding that the plaintiff's contention that he exhausted his administrative remedies because he appealed a disciplinary hearing was without merit,

Plaintiff's argument is belied by the fact that Plaintiff appealed the Superintendent's February 14, 2008 determination regarding his grievance to the CORC.  Dkt. No. 27-8, at 6.  Accordingly, Plaintiff's argument is unavailing.

I also note that with regard to the three-part inquiry set forth in *Hemphill*, first, an administrative remedy was available to Plaintiff.[18]  Plaintiff expressly stated that there was a prisoner grievance procedure at Gouverneur C.F. through which he filed a grievance.  Dkt. No. 1 at ¶ 4.  Thus, Plaintiff had available to him an administrative remedy which should have been pursued to completion before filing the instant action.

Second, Defendant is not estopped from asserting the exhaustion defense.[19]  Here, Plaintiff alleges no facts suggesting that Defendant took any actions that inhibited Plaintiff from exhausting his available administrative remedies before commencing this action.

Third, Plaintiff has not alleged special circumstances justifying his failure to exhaust his

---

and that "[a]n appeal of the disciplinary hearing determination does not satisfy the PLRA's exhaustion requirement") (citation omitted)).

[18]  To be "available" for purposes of the PLRA, an administrative remedy must afford "the possibility of some relief for the action complained of."  *Booth v. Churner*, 532 U.S. 731, 738 (2001).  In addition, a court deciding this issue must apply an objective test and determine whether a similarly situated person of ordinary firmness would have deemed the administrative remedy available.  *Hemphill*, 380 F.3d at 688.

[19]  A defendant may be equitably estopped from raising the exhaustion defense if he or she engaged in conduct that hindered the plaintiff's ability to pursue his or her administrative remedies. *Ziemba v. Wezner*, 366 F.3d 161, 162-63 (2d Cir. 2004)(district court directed to consider whether defendants were estopped from asserting exhaustion defense where inmate alleged that he was beaten, threatened, denied grievance forms, and transferred to another prison).  A prison official's refusal to accept or forward a prisoner's grievance is conduct that hinders a plaintiff's ability to pursue administrative remedies.  *Sandlin v. Poole*, 575 F. Supp. 2d 484, 488 (W.D.N.Y. 2008).

administrative remedies before commencing this lawsuit.[20]  Plaintiff has not alleged that he was laboring under any sort of physical infirmity, or reasonable misunderstanding of the law.  Therefore, Plaintiff's failure to exhaust his administrative remedies before commencing this action is not justified.

Moreover, the exhaustion of Plaintiff's grievance after this suit was filed is insufficient.  In *Neal v. Goord*, the Second Circuit held that "[s]ubsequent exhaustion after suit is filed . . . is insufficient." *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002).  The Court explained as follows:

> [A]llowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court.  Moreover, contrary to [the plaintiff's] argument of judicial inefficiency, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court will have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset.

*Id.* at 123.  In other words, "The fact that a grievance is filed, or the process is completed, subsequent to commencement of suit will not salvage an otherwise premature filing." *Chalif v. Spitzer*, No. 9:05-CV-1355, 2008 WL 1848650, at *13 (N.D.N.Y. Apr. 23, 2008) (Kahn, J., adopting Report-Recommendation of Peebles, M.J. in which the plaintiff's claim was subject to dismissal because exhaustion had not occurred at the time the action was filed) (citing *Neal*, 267 F.3d at 122).

---

[20]  Justification "must be determined by looking at the circumstances which might understandably lead . . . uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Good*, 380 F.3d 670, 678 (2d Cir. 2004).

Accordingly, I recommend that the complaint be dismissed without prejudice to re-filing.[21]

While this may not be the most efficient result, as noted in *Mendez v. Artuz*:

> [T]he Court of Appeals has ruled that from the broader perspective of Congress and appellate judges, the greater good forbids allowing a case to proceed where administrative remedies have been exhausted while the complaint is pending, and requires in such a case dismissal of the complaint, to be re-filed, if the plaintiff wishes, with the addition of paragraphs explaining how administrative remedies have been exhausted.

No. 01 CIV. 4157, 2002 WL 313796, at * 2 (S.D.N.Y. Feb. 27, 2002) (holding that prisoner failed to exhaust administrative remedies when he commenced civil rights action before receiving decision from the CORC) (citing *Neal,* 267 F.3d at 123).  Thus, Defendant's motion for summary judgment should be granted in this regard.

## B.     FALSE MISBEHAVIOR REPORT

"[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)).  In addition, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing." *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986).  The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more, such as "retaliation against the prisoner for exercising a constitutional right." *Boddie*, 105 F.3d at 862.

To state a claim for retaliation, a plaintiff must plead facts plausibly suggesting that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the

---

[21]  *See Torres v. Caron*, No. 9:08-CV-0416, 2009 WL 5216956, at *6-7 (N.D.N.Y. Dec. 30, 2009) (Mordue, C.J., adopting Report-Recommendation of Lowe, M.J.) (same result reached).

plaintiff; and (3) there was a causal connection between the protected speech and the adverse action-in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

Once the plaintiff's burden of proving the three-part test is satisfied, "the burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (citing *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).  Thus, under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.  *Graham*, 89 F.3d at 79 (citations omitted).

### 1.    Conduct

Plaintiff essentially argues that his stated intent to file a grievance was constitutionally protected conduct.  Dkt. No. 31.  Defendant argues that a "statement of intent to file a grievance is not 'protected' speech or conduct[] for § 1983 purposes."  Dkt. No. 27-2 at 8.

The filing of a grievance against prison officials is constitutionally protected conduct.  *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003); *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996).  Similarly, an inmate's stated intent to file a grievance has been treated as protected conduct. For instance, in *Coleman v. Beale*, an inmate made oral statements to an alcohol and substance abuse treatment program assistant regarding the inmate's intent to file grievances against the assistant.  *Coleman v. Beale*, 636 F. Supp. 2d 207, 210-11 (W.D.N.Y. 2009).  The inmate subsequently filed grievances against the assistant.  *Id.*  The court held, and defendants conceded,

11

that the inmate's "filing of grievances was constitutionally protected, as were his statements to [the assistant] that he intended to file grievances against her." *Id.* at 211 (citing *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003) ("the filing of prison grievances is a constitutionally protected activity"); *Shine v. Hofman*, 548 F. Supp. 2d 112, 121 (D. Vt. 2008); and *Williams v. Ingraham*, No. 04CV257, 2005 WL 3746222, at *2 (N.D.N.Y. Feb. 3, 2005) ("The [inmate's] conduct at issue-complaints to judicial officials, filing a lawsuit, and grievances-are clearly constitutionally protected rights")). Likewise, in *Shine v. Hofman*, the court treated an inmate's stated intent to file a grievance as protected conduct. *Shine*, 548 F. Supp. 2d at 121. Accordingly, Plaintiff's stated intent to file a grievance was protected conduct.

### 2. Adverse Action

Plaintiff alleges that as a result of the false misbehavior report, he was held in the Special Housing Unit ("SHU") for thirty (30) days. Dkt. No. 31 at 7. Defendant appears to argue, in a footnote, that Plaintiff failed to allege that Defendant took any adverse action *after* Plaintiff filed his grievance; therefore Plaintiff has not established this element. Dkt. No. 27-2, at 11, n. 15.

However, as discussed above, I will treat Plaintiff's stated intent to file a grievance as protected conduct. Again, Plaintiff alleges that Defendant issued a false misbehavior report against Plaintiff after he stated his intention to file a grievance. Dkt. No. 1. As a result of the misbehavior report, Plaintiff was held in SHU for thirty (30) days. Dkt. No. 31 at 7. The filing of a false misbehavior report that results in a SHU sentence is an example of "adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 383-84 (2d Cir. 2004). Therefore, Plaintiff has alleged that Defendant took adverse action.

### 3. Substantial or Motivating Factor

12

Plaintiff must now show that the protected conduct was the "substantial motivating factor," resulting in the adverse action. *Bennet v. Goord*, 343 F.3d at 137.

Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot*, 224 F.Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Those factors include: (I) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation. *Id.* (citing *Colon*, 58 F.3d at 872-73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.*

Regarding temporal proximity, "[a] plaintiff can establish a casual connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citations omitted). No bright line test has been drawn "'to define the outer limits beyond which a temporal relationship is too attenuated to establish a casual relationship between the exercise of a federal constitutional right and an allegedly retaliatory action.'" *Id.* (quoting *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001)). The Second Circuit held that the passage of "only six months" between the dismissal of a prisoner's lawsuit and an allegedly retaliatory beating by officers, one of whom was a defendant in the prior lawsuit, is sufficient to support an inference of a casual connection. *Id.* (citing *Gorman-Bakos*, 252 F.3d at 555 (suggesting the lapse of five months between protected activity and retaliation may show a casual connection).

Here, Plaintiff alleges that he received the false misbehavior report the day after the alleged

13

incident.  Dkt. No. 31 at ¶ 10.  Therefore, the timing of the filing of the misbehavior report provides

some support for an inference that the protected conduct played a part in the filing.

Regarding the vindication factor, vindication of the inmate after a hearing may constitute

circumstantial evidence of a defendant's retaliatory motive.  *Gayle*, 313 F.3d at 683 ("A false reason

for the report's issuance would support the inference that the real reason was the improper one:

retaliation.").  Here, Plaintiff was charged with violating Rule 104.11 (Violent Conduct); Rule

104.13 (Creating a Disturbance); Rule 107.10 (Interference with Employee); Rule 106.10 (Refusing

Direct Order); and Rule 102.10 (Threats).  Dkt. No. 27-9 at 1.  Plaintiff was found not guilty of a

majority of the charges, specifically Rule 104.11 (violent conduct); Rule 107.10 (Interference with

Employee); and Rule 102.10 (Threats).  Thus, he was found guilty of violating only Rule 104.13

(creating a disturbance) and Rule 106.10 (Refusing Direct Order).  *Id.*  Accordingly, Plaintiff's

partial vindication weighs somewhat in his favor.[22]

Regarding statements made by Defendant, Plaintiff claims the following: He attempted to

leave the bible study group "on the early go-back."  Dkt. No. 31 at ¶ 4.  Defendant told Plaintiff to

go back to the chapel because "Protestant Bible Study never goes back early on her shift."  *Id.* at ¶ 5.

As Plaintiff walked to the chapel, he stated, "'Rules are always changing on Thursday night and I

will grieve this.'"  *Id.* at ¶ 6.  Defendant entered the chapel and ordered Plaintiff to return to her

desk, which Plaintiff did.  Dkt. No. 31 at ¶ 7.  Defendant asked Plaintiff why he threatened her.  *Id.*

at ¶ 8.  Plaintiff denied threatening Defendant.  *Id.*  Defendant then stated, "'**I'll teach you to**

---

[22]  *See Ahlers v. Grygo*, No. 02-CV-3256, 2009 WL 691927, at *8 (E.D.N.Y. Mar. 13, 2009)
(holding that the plaintiff adduced sufficient evidence to create a genuine issue of material fact on
the issue of retaliatory intent where, *inter alia*, the plaintiff was vindicated at a hearing as to one of
the charges).

**threaten me.**'" *Id.* at ¶ 9 (emphasis added).  Defendant called "Sgt. Leone," who escorted Plaintiff

to SHU.  *Id.*  The next day, Plaintiff received the false misbehavior report.  *Id.* at ¶ 10.

Similarly, at the disciplinary hearing, Plaintiff described the incident as occurring, in part, as

follows:

> C.O. Brown entered and called me out of the chapel to her desk.  She said[,]
> ["][W]hy did you threaten me["]?  I said[,] ["I never threatened you.["]  She told me
> to have a seat on the bench.  She said[,] ["]**I'll teach you to grieve me.**["]

Dkt. No. 27-9 at 12 (emphasis added).

Further, at Plaintiff's deposition, Plaintiff stated that after Defendant ordered Plaintiff to

leave the chapel, Defendant stated, "['] **I'm going to teach you to grieve me.**[']  She got on the

telephone, she called Sergeant Leone and said [']I have an Inmate Brown here who just threatened

me.[']"  Dkt. No. 27-14 at 35 (emphasis added).  In light of the foregoing, I find that it would be

reasonable to infer from Defendant's alleged statements that she may have acted with a retaliatory

motive.

Viewing the evidence in the light most favorable to Plaintiff, I find that there is a genuine

issue of material fact as to whether retaliation was a substantial or motivating factor in Defendant's

filing of the misbehavior report.  *See Ahlers v. Grygo*, No. 02-CV-3256, 2009 WL 691927, at *7

(E.D.N.Y. Mar. 13, 2009) (finding that it would be reasonable to infer from a correction officer's

statements, including "what goes around, comes around," and "payback is a bitch," that he was

threatening retribution against prisoner) (citing *Colon*, 58 F.3d at 873 (holding that disparity

between the affidavits of a prisoner and corrections officer "itself creates a credibility issue that is

not readily amenable to resolution on summary judgment")).

### 4.    Basis for Adverse Action

15

Defendant argues that even if Plaintiff could show that an improper motive played a substantial part in her "disciplinary action," she "could have taken exactly the same action absent the improper motive."  Dkt. No. 27-2 at 11.

Even if an inmate plaintiff meets his burden under this three-pronged test, a defendant is entitled to summary judgment if she can demonstrate that she would have taken the same action against the plaintiff absent any retaliatory motivation.  *See Gayle*, 313 F.3d at 682.  "At the summary judgment stage, if the **undisputed facts** demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail." *Davidson v. Chestnut*, 193 F.3d 144, 149 (2d Cir. 1999) (per curiam) (emphasis added).  Courts employ a "'presumption that a prison official's acts to maintain order are done for a proper purpose.' " *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir.) (quoting *Rivera v. Senkowski*, 62 F.3d 80, 86 (2d Cir.1995)), cert. denied, 525 U.S. 907 (1998).  Thus, " '[t]he conclusion that the state action would have been taken in the absence of improper motives is readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage.' " *Hynes*, 143 F.3d at 657 (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir.1994)).

Plaintiff argues that he obeyed all orders, and was not violent, aggressive, or loud.  Dkt. No. 31 at 4.  He also states that he created no disturbance and made no threats.  *Id.*  For support, Plaintiff claims that a correctional officer testified at the disciplinary hearing that he heard the exchange between the parties; that there was no noise or yelling; and that Defendant lied.  *Id.* at 6.  Plaintiff also claims that the exchange was witnessed by another inmate, who apparently will support Plaintiff's position.  *Id.*

16

Defense counsel argues that Defendant's "account of the event must control" because the Appellate Division, Third Department, confirmed the guilty determination during an Article 78 proceeding commenced by Plaintiff.[23]  Dkt. No. 27-2 at 10.  However, Defendant's "account of the event" is unknown, since Defendant filed no affidavit or declaration.  Moreover, it is unclear if counsel is referring to Defendant's unsworn account of the events as set forth in the misbehavior report, (Dkt. No. 27-9, at 5), or to her unsworn testimony at the disciplinary hearing, (Dkt. No. 27-9, at 10-31), or to both.

In any event, it is therefore disputed whether Plaintiff committed the prohibited conduct. Accordingly, at this stage of the proceeding Defendant has not met her burden of establishing that

---

[23]  To the extent that Defendant is arguing that Plaintiff should be collaterally estopped from asserting his retaliation claim, this argument is unavailing.  Defendant vaguely claims that "[i]n *Brown v. Taylor, et al*, the plaintiff presented the same factual allegations as in this action. *Inter alia* he argued that C.O. Brown had issued a 'retaliatory' misbehavior report and set forth an array of reasons why her testimony should not have been credited."  Dkt. No. 27-2 at 11.

First, I note that the action was brought against **only** Justin Taylor, Superintendent of Gouverneur C.F.  Dkt. No. 27-9 at 1; Dkt. No. 27-10, at 6, 7; Dkt. No. 27-12 at 1.  Therefore, the reference to "*Brown v. Taylor, et al*" is incorrect.

Second, Defendant has failed to clearly establish that the retaliation claim was actually raised and decided in that proceeding.  In her memorandum of law, Defendant cites *Colon v. Coughlin*, in which the court noted that "the doctrine of issue preclusion only applies if (1) **the issue in question was actually and necessarily decided in a prior proceeding**, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995) (citation omitted) (emphasis added).  "Issue preclusion will apply only if it is **quite clear** that these requirements have been satisfied, lest a party be 'precluded from obtaining at least one full hearing on his or her claim.'"  *Id.* (citation omitted) (emphasis added).  "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided."  *Id.* (citation omitted).  Here, Defendant has not clearly established that the retaliation claim was raised and actually and necessarily decided.  Therefore, to the extent that Defendant is arguing that collateral estoppel should apply, this argument is unavailing.

she would have filed the misbehavior report even in the absence of the protected conduct.[24]  The

credibility of the witnesses and the weight of the evidence are issues within the province of the jury,

and not for the Court to decide on summary judgment.[25]

Moreover, as noted, it is the moving party's burden of showing, through the production of

admissible evidence, that no genuine issue of material fact exists.  Defendant has failed to carry her

burden.  For instance, the only pieces of "evidence" to which Defendant points to show an absence

of a genuine issue of material fact regarding the "substantial or motivating factor" analysis are (1) a

statement or statements made by Plaintiff during his deposition, which Defendant claims is a

concession by Plaintiff that inmates cannot "indulge" in "rebellious behavior;" and the (2) Appellate

Division's decision confirming the guilty findings.  Dkt. No. 27-2, at 10-11.  This "evidence" does

not establish the absence of a genuine issue of material fact.  Accordingly, I would recommend

denying Defendant's motion for summary judgment in this regard.  However, because Plaintiff

---

[24]  *See Gayle*, 313 F.3d at 684 (holding that the prison officials at the summary judgment stage failed to meet their burden of establishing as a matter of law that the prisoner "would have been punished to the same extent he was punished in the absence of a retaliatory motive" where it was *disputed* whether the prisoner "committed all of the prohibited conduct, and, more important, whether he committed the most serious of the conduct - threatening to instigate inmate unrest"); *see also Ashley v. Wakefield*, 367 F. Supp. 2d 461, 468 (W.D.N.Y. 2005) (holding that the prison officers did not satisfy their burden of showing that they would have taken the same adverse actions even in the absence of the prisoner's protected activities where the prisoner denied engaging in the alleged conduct).

[25]  *See Ashley*, 367 F. Supp. 2d at 468 (citing *Graham*, 89 F.3d at 81 (finding that the plaintiff's "punishment was either wholly retaliatory or it was not retaliatory at all.  This question runs to matters of credibility and weight of the evidence, which are matters for the jury."); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (finding that summary judgment was inappropriate where there was evidence of admission of retaliatory motive by defendants and circumstantial evidence based on temporal proximity between grievance and retaliation); *Jones v. Coughlin*, 45 F.3d 677, 680 (2d Cir. 1995) (stating that "determinations as to whether to credit such testimony and as to what inference to draw from the sequence of events is within the province of the factfinder at trial on the retaliation claims, not of the court on a motion for summary judgment.")).

failed to exhaust administrative remedies before commencing this action, Defendant's motion should be granted.

### C.    QUALIFIED IMMUNITY

Defendant argues that she is shielded from liability for damages based on qualified immunity.  Dkt. No. 27-2 at 11.  Plaintiff does not specifically address the issue, but argues in general that Defendant's motion should be denied.  Dkt. No. 31.

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982)).  A determination of this issue involves deciding whether the facts that a plaintiff has alleged, or shown, make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  *Pearson*, 129 S. Ct. at 815-16 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)).

"A right is sufficiently clearly established if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' " *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  The following three factors are considered when determining whether a particular right was clearly established at the time a defendant acted:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S. 962 (1992).[26]  "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful."  *Higazy*, 505 F.3d at 169-70 (citations omitted).[27]  This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  As the Supreme Court has explained,

> [T]he qualified immunity defense . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law. . . . Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley*, 475 U.S. at 341.

However, when "there are facts in dispute that are material to a determination of reasonableness," dismissal on the basis of a qualified immunity defense is inappropriate.  *Thomas v.*

---

[26]  *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

[27]  *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") [citation omitted]; *Davis v. Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

20

*Roach*, 165 F.3d 137, 143 (2d Cir. 1999); *Ali v. Szabo*, 81 F. Supp. 2d 447, 461 (S.D.N.Y. 2000)

("The Court cannot conclude as a matter of law that [the officers'] conduct was objectively

reasonable since there are material issues of fact as to whether [plaintiff] was obeying the officers'

order and who started the physical confrontation.").

There are genuine issues of material fact regarding Plaintiff's retaliation claim.  Accordingly,

I would recommend in favor of denying Defendant's motion in this regard.[28]  However because

Plaintiff failed to exhaust administrative remedies before commencing this action, Defendant's

motion should be granted.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 27) be

**GRANTED** and the complaint be **DISMISSED** without prejudice to re-filing; and it is further

**ORDERED** that the Clerk serve copies of the electronically-available-only decisions cited

in this Report-Recommendation & Order on Plaintiff.[29]

--------

[28]  *See Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998) ("[S]ummary judgment based
either on the merits or on qualified immunity requires that no disputes about material facts remain.")
(citations omitted); *Deal v. Yurack*, No. 9:04-CV-0072, 2007 WL 2789615, at *14 (N.D.N.Y. Sept.
24, 2007) (Kahn, J., adopting Report-Recommendation of Peebles, M.J., finding that whether "the
defendants maintained a good faith belief that their actions did not violate clearly established rights
depends on the resolution of fact issues similar to those identified as precluding entry of summary
judgment on the merits of plaintiff's retaliation and excessive force claims.  As such . . . the court is
not currently positioned to determine defendant's entitlement to qualified immunity."); *see also
Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 542 (S.D.N.Y. 2005) ("[T]he same genuine issues
of material fact that preclude summary judgment on plaintiff's excessive force claim, also preclude
application of the defense of qualified immunity at the summary judgment stage."); *Dellamore v.
Stenros*, 886 F. Supp. 349, 352 (S.D.N.Y. 1995) (finding that material factual disputes exist on the
issue of qualified immunity for the same reasons that the court denied the motion for summary
judgment on the plaintiff's Eighth Amendment excessive force claim).

[29]  The decisions include: *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177 (W.D.N.Y.
Mar. 29, 2004); *Chavis v. Goord*, No. 07-4787-pr, 2009 WL 1803454 (2d Cir. June 25, 2009); *Black*

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE

APPELLATE REVIEW.  *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of*

*Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72,

6(a), 6(e).

Dated: January 19, 2010
      Syracuse, New York

                                    George H. Lowe
                                    United States Magistrate Judge

---

*v. Selsky*, No. 01-CV-0155E, 2004 WL 625621 (W.D.N.Y. Jan. 13, 2004); *Chalif v. Spitzer*, No.
9:05-CV-1355, 2008 WL 1848650 (N.D.N.Y. Apr. 23, 2008); *Torres v. Caron*, No. 9:08-CV-0416,
2009 WL 5216956 (N.D.N.Y. Dec. 30, 2009); *Mendez v. Artuz*, No. 01 CIV. 4157, 2002 WL
313796 (S.D.N.Y. Feb. 27, 2002); *Williams v. Ingraham*, No. 04CV257, 2005 WL 3746222
(N.D.N.Y. Feb. 3, 2005); *Ahlers v. Grygo*, No. 02-CV-3256, 2009 WL 691927 (E.D.N.Y. Mar. 13,
2009); and *Deal v. Yurack*, No. 9:04-CV-0072, 2007 WL 2789615 (N.D.N.Y. Sept. 24, 2007).